# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

ROGER RAINEY and RICKY DAVIS, )
                                                     )
    Plaintiffs, )
                                                     )
v. )    Case No. _____
                                                     )
CITY OF KNOXVILLE, TENNESSEE, )
                                                     )
    Defendant. )

## COMPLAINT

Plaintiffs, Roger A. Rainey and Ricky Davis, in support of their Complaint against Defendant, City of Knoxville, Tennessee, state as follows:

### Jurisdiction and Venue

1. This Court's jurisdiction rests with 28 U.S.C. § 1343(a)(3) to redress the deprivation of rights, privileges, or immunities secured by the First Amendment and Fourteenth Amendment to the United States Constitution.

2. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because all parties reside in this judicial district and all or a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

### Parties

3. Plaintiff, Roger Rainey, is a fifty-eight-year-old resident of Anderson County, Tennessee.

4. Plaintiff, Ricky Davis, is a fifty-eight-year-old resident of Knox County, Tennessee.

5. Defendant, City of Knoxville, Tennessee, is a unit of local government organized under the laws of the State of Tennessee. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant hereto acted under color of law. Further, Defendant is an employer within the meaning of the TPPA.

Facts

6. Plaintiff Roger Rainey began working for Defendant's Fleet Services Division on July 3, 2000 as a mechanic. At all relevant times, Rainey's job title was Supervisor II.

7. Plaintiff Ricky David began working for Defendant's Fleet Services Division on March 29, 2010. At all relevant times, Davis's job title was Mechanic Tech I.

8. At all relevant times, the shop manager over Fleet Services was Jeff Johnston.

9. In 2019, Plaintiffs discovered that Johnston had, for months on end, used city time and equipment to visit motels, parks, private residences, parking lots, and other spots across the city for hours a day.

10. Plaintiffs were concerned that Johnston's bosses were aware of—but turning a blind eye to—this misconduct, waste, and abuse of City tax dollars.

11. Accordingly, Plaintiffs gathered evidence with cameras and city-issued GPS devices and, in May 2019, reported Johnston's misconduct to Civil Service Director Vicki Hatfield.

12. In a private meeting between the City Civil Service Department and Plaintiffs, it was expressed to Plaintiffs that Fleet Services would "cover up" Johnston's misconduct and that the normal grievance system might not produce any further action against Johnston.

13. Months went by, and it became increasingly clear that Johnston was not going to suffer any repercussions. Instead, it appeared the City was also willing to turn a blind eye to Johnston's misconduct.

14. Believing that nothing was going to be done about this abuse, and given the public's right to know, Plaintiffs shared the evidence they gathered with the Knoxville News Sentinel, which then published an article on December 23, 2019 titled "City Workers Tracked Boss With GPS" as the headlining article of the newspaper that day. The article detailed the efforts undertaken by Plaintiffs and their findings that Johnston used a city vehicle to visit personal

places on city time.

15. In response to this article, on January 27, 2020, Director of Fleet Services Keith Shields placed both Plaintiffs on a so-called administrative leave. In a Memorandum from Mr. Shields, both Plaintiffs were suspended for five (5) working days pending an investigation into alleged rule violations allegedly committed by Plaintiffs.

16. At the end of the initial five-day administrative leave, Plaintiffs contacted the City and were told that the "investigation" was still ongoing and that their administrative leave was extended another five (5) days.

17. Plaintiff then contacted the City after the second five-day administrative leave and were told essentially the same thing: the investigation was ongoing and to check back in in 5 days.

18. This routine continued for a while where Plaintiffs were told to "check back" in 5 days to determine when they were to report to work while the investigation into both of their alleged misconduct was ongoing.

19. Eventually, the City told Plaintiffs not to bother to "check in" and that their administrative leave was indefinite while the City continued to investigate Plaintiffs' alleged rule violations.

20. For months, Plaintiffs were then forced to stay at home knowing that the City was sending police officers to interview their peers and investigate their personal and/or professional backgrounds. Indeed, Plaintiffs were forced to call the city and use vacation time if they wanted to leave town for vacation.

21. The actions of the City and its employees caused Plaintiffs to suffer severe anxiety, emotional distress, and other emotional and/or physical damages through its aggressive, unwarranted, and extended "investigation" of Plaintiffs.

22. Plaintiffs remain on administrative leave with the City as of the date of this filing.

Count I
Retaliation in Violation of the
First and Fourteenth Amendments to the U.S. Constitution

23. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1–23 as if set forth fully herein.

24. Plaintiffs engaged in speech protected by the First Amendment to the United States Constitution.

25. At all material times, Defendant acted under color of law state law.

26. Defendant retaliated against Plaintiffs because they exercised rights protected by the First Amendment. By doing so, Defendant has further violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution, by failing to provide due process of law before suspending their employment.

27. As a direct and proximate result of Defendant's violation of Plaintiffs' constitutional rights, Plaintiffs seek all relief available under 42 U.S.C. § 1983, including but not limited to, damages for lost wages and other employment benefits as well as compensatory damages for emotional distress and damage to reputation, together with attorneys' fees and costs associated with this action.

28. Further, Defendant's conduct was of such a wanton, reckless and malicious nature so as to entitle Plaintiffs to punitive damages under applicable federal law.

Prayer for Relief

WHEREFORE, Plaintiffs, Roger Rainey and Richard Davis, respectfully pray for relief as follows:

1. That process issue and that Defendant be required to answer this Complaint within the time prescribed by the Federal Rules of Civil Procedure.

2. That Plaintiffs be awarded damages in the amount of wages, salary, employment benefits and other compensation, including, but not limited to back pay and front pay (or reinstatement), plus an equal amount of liquidated damages and/or prejudgment interest; compensatory damages for emotional distress and damage to reputation, and punitive damages for Defendant's intentional indifference to Plaintiffs' protected rights;

3. That Plaintiffs be awarded reasonable attorneys' fees and costs;

4. That Plaintiffs be awarded such other legal and equitable relief to which they may be entitled; and

5. Plaintiffs further demand a Jury to try this cause.

Respectfully submitted,

/s/Richard E. Collins
Richard E. Collins (TN Bar No. 024368)
STANLEY, KURTZ & COLLINS, PLLC
422 S. Gay Street, Suite 301
Knoxville, TN 37902
(865) 522-9942
(865) 522-9945 fax
richard@knoxvilleattorney.com

Jonathan W. Doolan (TN Bar No. 024397)
LAW OFFICE OF JONATHAN W. DOOLAN
800 S. Gay Street, Suite 2250
Knoxville, TN 37929
(865) 851-1030
jonathan@doolanlawoffice.com