IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

ROGER RAINEY and RICKY DAVIS, )
)
   Plaintiffs, )
)
v. ) Case No. 3:21-cv-00029
)
CITY OF KNOXVILLE, TENNESSEE, )
)
   Defendant. )
)

## FIRST AMENDED COMPLAINT

Plaintiffs, Roger A. Rainey and Ricky Davis, in support of their First Amended Complaint against Defendant, City of Knoxville, Tennessee, state as follows:

### Jurisdiction and Venue

1. This Court's jurisdiction rests with 28 U.S.C. § 1343(a)(3) to redress the deprivation of rights, privileges, or immunities secured by the First Amendment and Fourteenth Amendment to the United States Constitution.

2. Venue is proper under 28 U.S.C. § 1391(b)(1) and (2), because all parties reside in this judicial district and all or a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this judicial district.

### Parties

3. Plaintiff, Roger Rainey, is a fifty-eight-year-old resident of Anderson County, Tennessee.

4. Plaintiff, Ricky Davis, is a fifty-eight-year-old resident of Knox County, Tennessee.

5. Defendant, City of Knoxville, Tennessee, is a unit of local government organized under the laws of the State of Tennessee. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant hereto acted under color of law.

## Facts

6. Plaintiff Roger Rainey began working for Defendant's Fleet Services Division on July 3, 2000 as a mechanic. At all relevant times, Rainey's job title was Supervisor II.

7. Plaintiff Ricky David began working for Defendant's Fleet Services Division on March 29, 2010. At all relevant times, Davis's job title was Mechanic Tech I.

8. At all relevant times, the shop manager over Fleet Services was Jeff Johnston.

9. In 2019, Plaintiffs discovered that Johnston had, for months on end, used city time and equipment to visit motels, parks, private residences, parking lots, and other spots across the city for hours a day.

10. Plaintiffs were concerned that Johnston's bosses were aware of—but turning a blind eye to—this misconduct, waste, and abuse of City tax dollars.

11. Accordingly, Plaintiffs gathered evidence with cameras and city-issued GPS devices and, in May 2019, reported Johnston's misconduct to Civil Service Director Vicki Hatfield.

12. In a private meeting between the City Civil Service Department and Plaintiffs, it was expressed to Plaintiffs that Fleet Services would "cover up" Johnston's misconduct and that the normal grievance system might not produce any further action against Johnston.

13. Months went by, and it became increasingly clear that Johnston was not going to suffer any repercussions. Instead, it appeared the City was also willing to turn a blind eye to Johnston's misconduct.

14. Believing that nothing was going to be done about this abuse, and given the public's right to know, Plaintiffs shared the evidence they gathered with the Knoxville News Sentinel, which then published an article on December 23, 2019 titled "City Workers Tracked Boss With GPS" as the headlining article of the newspaper that day. The article detailed the efforts undertaken by Plaintiffs and their findings that Johnston used a city vehicle to visit personal

places on city time.

15. Plaintiffs' protected speech involved matters of public interest or concern, *i.e.* a City employee's wasting of taxpayer dollars and wrongful use of a City issued vehicle.

16. Plaintiff's interest in addressing the waste of taxpayer dollars and wrongful use of a City issued vehicle outweigh the City's interest in promoting the efficiency of the services it performs. Indeed, Plaintiffs' protected speech was meant to further promote the efficiency of the services performed by the City by addressing the waste of taxpayer's money and wrongful use of a City issued vehicle.

17. In response to this article, on January 27, 2020, Director of Fleet Services Keith Shields placed both Plaintiffs on a so-called administrative leave. In a Memorandum from Mr. Shields, both Plaintiffs were suspended for five (5) working days pending an investigation into alleged rule violations allegedly committed by Plaintiffs.

18. Mr. Shields is the Director of the Fleet Services Department with the City of Knoxville and, as such, had final policymaking authority from the City in placing Plaintiffs on the so-called administrative leave.

19. The acts of Mr. Shields deprived Plaintiffs of their constitutionally protected First Amendment rights; that is, Mr. Shields's acts were so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused their ultimate injury.

20. Mr. Shields's actions in this case were all under the color of state law, and the Memoranda sent to Plaintiffs informing them of their administrative leave were written on Mr. Shields's letterhead as the Director of the Fleet Services of Knoxville and further included the City Mayor's name. They were signed by Mr. Shields.

21. At the end of the initial five-day administrative leave, Plaintiffs contacted the City and were told that the "investigation" was still ongoing and that their administrative leave was

extended another five (5) days.

22. Plaintiff then contacted the City after the second five-day administrative leave and were told essentially the same thing: the investigation was ongoing and to check back in in 5 days.

23. This routine continued for a while where Plaintiffs were told to "check back" in 5 days to determine when they were to report to work while the investigation into both of their alleged misconduct was ongoing.

24. Eventually, the City told Plaintiffs not to bother to "check in" and that their administrative leave was indefinite while the City continued to investigate Plaintiffs' alleged rule violations.

25. The City then sent uniformed Police Officers to "interview" friends and co-workers of the Plaintiffs. The City also, on several occasions, required Plaintiffs to travel to the Knoxville Police Department "KPD" to provide separate statements to KPD about the alleged "violations" mentioned by Mr. Shields.

26. For months, Plaintiffs were then forced to stay at home knowing that the City was sending police officers to interview their peers and investigate their personal and/or professional backgrounds. Indeed, Plaintiffs were forced to call the city and use vacation time if they wanted to leave town for vacation.

27. Plaintiffs aver that the extremely long "administrative leave" – at this point now fifteen months and counting – along with sending uniformed police officers to "investigate" the vague and broad allegations alleged by Mr. Shields, is an inartful and obvious attempt by the City to relieve itself of liability under §1983 and any other potential state or federal claims against the City. The actions of the City are further meant to harass and/or intimidate potential witnesses to testify against Plaintiffs at any upcoming hearings and/or the Plaintiffs themselves

into resigning from their positions with the City.

28. Further, the actions of the City, both in suspending the Plaintiffs and their investigations by KPD, are designed to and in effect did "chill" or silence the Plaintiffs and any other person of ordinary firmness from future First Amendment activities.

29. The actions of the City and its employees caused Plaintiffs to suffer severe anxiety, emotional distress, and other emotional and/or physical damages through its aggressive, unwarranted, and extended "investigation" of Plaintiffs.

30. Plaintiffs remain on administrative leave with the City as of the date of this filing.

31. Plaintiffs have expressed desire to file grievances with the City to address their Complaints, but their requests have been preemptively denied because the City attempts to hide behind the falsehood that no "adverse employment action" has been taken by the city. Therefore, any post-deprivation remedies Plaintiffs may have against the City are inadequate and Plaintiffs' due process rights have been violated.

32. Plaintiffs other potential state remedies are also inadequate and, therefore, Plaintiffs must rely on their First and Fourteenth Amendment rights to redress the violations committed by the City. Specifically, state law requires a "termination" instead of an adverse employment action, and any state law remedies are inadequate in this case.

Count I
Retaliation in Violation of the
First and Fourteenth Amendments to the U.S. Constitution

33. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1–32 as if set forth fully herein.

34. Plaintiffs engaged in speech protected by the First Amendment to the United States Constitution.

35. At all material times, Defendant acted under color of law state law.

36. Defendant retaliated against Plaintiffs because they exercised rights protected by the First Amendment. By doing so, Defendant has further violated Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution, by failing to provide due process of law before suspending their employment.

37. As a direct and proximate result of Defendant's violation of Plaintiffs' constitutional rights, Plaintiffs seek all relief available under 42 U.S.C. § 1983, including but not limited to, damages for lost wages and other employment benefits as well as compensatory damages for emotional distress and damage to reputation, together with attorneys' fees and costs associated with this action.

38. Further, Defendant's conduct was of such a wanton, reckless and malicious nature so as to entitle Plaintiffs to punitive damages under applicable federal law.

## Prayer for Relief

WHEREFORE, Plaintiffs, Roger Rainey and Richard Davis, respectfully pray for relief as follows:

1. That process issue and that Defendants be required to answer this Complaint within the time prescribed by the Federal Rules of Civil Procedure.

2. That Plaintiffs be awarded damages in the amount of wages, salary, employment benefits and other compensation, including, but not limited to back pay and front pay (or reinstatement), plus an equal amount of liquidated damages and/or prejudgment interest; compensatory damages for emotional distress and damage to reputation, and punitive damages for Defendants' intentional indifference to Plaintiffs' protected rights;

3. That Plaintiffs be awarded reasonable attorneys' fees and costs;

4. That Plaintiffs be awarded such other legal and equitable relief to which they may be entitled; and

5. Plaintiffs further demand a Jury to try this cause.

Respectfully submitted,

/s Jonathan W. Doolan
Richard E. Collins (TN Bar No. 024368)
STANLEY, KURTZ & COLLINS, PLLC
422 S. Gay Street, Suite 301
Knoxville, TN 37902
(865) 522-9942
(865) 522-9945 fax
richard@knoxvilleattorney.com

Jonathan W. Doolan (TN Bar No. 024397)
LAW OFFICE OF JONATHAN W. DOOLAN
800 S. Gay Street, Suite 2250
Knoxville, TN 37929
(865) 851-1030
jonathan@doolanlawoffice.com

CERTIFICATE OF SERVICE

I, Jonathan W. Doolan, counsel for the Plaintiffs in the captioned cause, do hereby certify that a true and exact copy of this pleading was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

This 27th day of April, 2021.

/s Jonathan W. Doolan
Jonathan W. Doolan