IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROGER RAINEY and RICK DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:21-cv-00029-JRG-HBG |
| ) | Jury Demanded |
| CITY OF KNOXVILLE, TENNESSEE, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant's motion to dismiss [Doc. 8] should be denied for the reasons stated below.

1. <u>Plaintiff States Actionable Claims against the City of Knoxville under 42 U.S.C. § 1983 for Violating Plaintiffs' Rights under the First and Fourteenth Amendments.</u>

When considering a motion to dismiss under Rule 12(b)(6), this Court must accept the allegations in the complaint as true and construe them in a light most favorable to the plaintiff. *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). In this case, Plaintiff Roger Rainey began working for Defendant's Fleet Services Division on July 3, 2000 as a mechanic. At all relevant times, Rainey' s job title was Supervisor II. (Pls.' Amend. Compl. ¶ 6.) Plaintiff Ricky David began working for Defendant's Fleet Services Division on March 29, 2010. At all relevant times, Davis's job title was Mechanic Tech I. (Id. ¶ 7.) At all relevant times , the shop manager over Fleet Services was Jeff Johnston. (Id. ¶ 8.)

In 2019, Plaintiffs discovered that Johnston had, for months on end, used city time and equipment to visit motels , parks, private residences , parking lots, and other spots across the city for hours a day. (Id. ¶ 9.) Plaintiffs were concerned that Johnston's bosses were aware of—but turning a blind eye to—this misconduct, waste, and abuse of City tax dollars. (Id. ¶ 10.) Accordingly, Plaintiffs gathered evidence with cameras and city-issued OPS devices and, in May

2019, reported Johnston's misconduct to Civil Service Director Vicki Hatfield. (Id. ¶ 11.) In a private meeting between the City Civil Service Department and Plaintiffs, it was expressed to Plaintiffs that Fleet Services would "cover up" Johnston's misconduct and that the normal grievance system might not produce any further action against Johnston. (Id. ¶ 12.)

Months went by, and it became increasingly clear that Johnston was not going to suffer any repercussions. Instead, it appeared the City was also willing to turn a blind eye to Johnston's misconduct. (Id. ¶ 13.) Believing that nothing was going to be done about this abuse, and given the public's right to know, Plaintiffs shared the evidence they gathered with the Knoxville News Sentinel, which then published an article on December 23, 2019 titled *City Workers Tracked Boss With OPS* as the headlining article of the newspaper that day. The article detailed the efforts undertaken by Plaintiffs and their findings that Johnston used a city vehicle to visit personal places on city time. (Id. ¶ 14.)

Plaintiffs' protected speech involved matters of public interest or concern, i.e., a City employee's wasting of taxpayer dollars and wrongful use of a City issued vehicle. (Id. ¶ 15.) Plaintiffs' interest in addressing the waste of taxpayer dollars and wrongful use of a City issued vehicle outweigh the City's interest in promoting the efficiency of the services it performs. (Id. ¶ 16.) Indeed, Plaintiffs' protected speech was meant to further promote the efficiency of the services performed by the City by addressing the waste of taxpayer's money and wrongful use of a City issued vehicle. (Id.)

In response to this article, on January 27, 2020, Director of Fleet Services Keith Shields placed both Plaintiffs on a so-called administrative leave. (Id. ¶ 17.) In a Memorandum from Mr. Shields, both Plaintiffs were suspended for five (5) working days pending an investigation into alleged rule violations allegedly committed by Plaintiffs. (Id.)

Mr. Shields is the Director of the Fleet Services Department with the City of Knoxville and, as such, had final policymaking authority from the City in placing Plaintiffs on the so-called administrative leave. (Id. ¶ 18.) The acts of Mr. Shields deprived Plaintiffs of their constitutionally protected First Amendment rights; that is, Mr. Shields's acts were so closely related to the deprivation of the Plaintiffs' rights as to be the moving force that caused their ultimate injury. (Id. ¶ 19.) Mr. Shields's actions in this case were all under the color of state law, and the Memoranda sent to Plaintiffs informing them of their administrative leave were written on Mr. Shields's official letterhead as the Director of the Fleet Services of Knoxville and further included the City Mayor's name. (Id. ¶ 20.) They were signed by Mr. Shields. (Id.)

At the end of the initial five-day administrative leave, Plaintiffs contacted the City and were told that the "investigation" was still ongoing and that their administrative leave was extended another five (5) days. (Id. ¶ 21.) Plaintiff then contacted the City after the second five-day administrative leave and were told essentially the same thing: the investigation was ongoing and to check back in in 5 days. (Id. ¶ 22.) This routine continued for a while where Plaintiffs were told to "check back" in 5 days to determine when they were to report to work while the investigation into both of their alleged misconduct was ongoing. (Id. ¶ 23.) Eventually, the City told Plaintiffs not to bother to "check in" and that their administrative leave was indefinite while the City continued to investigate Plaintiffs' alleged rule violations. (Id. ¶ 24.)

In addition to placing Plaintiffs on an indefinite suspension for well over a year, the City also sent uniformed Police Officers to "interview" friends and co-workers of the Plaintiffs. The City also, on several occasions, required Plaintiffs to travel to the Knoxville Police Department to provide separate statements to KPD about the alleged "violations" mentioned by Mr. Shields. (Id. ¶ 25.) For over a year now, Plaintiffs have been forced to stay at home knowing that the

City was sending police officers to interview their peers and investigate their personal and/or professional backgrounds. Indeed, Plaintiffs were forced to call the city and use vacation time if they wanted to leave town for vacation. (Id. ¶ 26.)

Plaintiffs aver that the extremely long "administrative leave"—at this point now fifteen months and counting—along with sending uniformed police officers to "investigate" the vague and broad allegations alleged by Mr. Shields, a final policymaker, is an inartful and obvious attempt by the City to further harass and/or intimidate potential witnesses to testify against Plaintiffs at any upcoming hearings and/or the Plaintiffs themselves into resigning from their positions with the City. (Id. ¶ 27.) Further, the actions of the City, both in suspending the Plaintiffs and in initiating investigations by KPD, are designed to and in effect did "chill" or silence the Plaintiffs and any other person of ordinary firmness from future First Amendment activities. (Id. ¶ 28.) And the actions of the City and its employees have caused Plaintiffs to suffer severe anxiety, emotional distress, and other emotional and/or physical damages through its aggressive, unwarranted, and extended "investigation" of Plaintiffs. (Id. ¶ 29.)

To this day, Plaintiffs remain on administrative leave with the City. (Id.) Further, Plaintiffs have expressed desire to file grievances with the City to address their Complaints, but their requests have been preemptively denied because the City attempts to hide behind the falsehood that no "adverse employment action" has been taken by the City, simply because the City continues to pay Plaintiffs their regular salaries. (Id. ¶ 31.) Accordingly, in addition to averring a cause of action against the City under the First Amendment, any post-deprivation remedies Plaintiffs may have against the City under its grievance policies are inadequate and Plaintiffs' due process rights have been violated. Plaintiffs other potential state remedies are also inadequate and, therefore, Plaintiffs must rely on their First and Fourteenth Amendment rights to

redress the violations committed by the City.  (Id. ¶ 32.)

    2.   <u>Plaintiffs Have Sufficiently Pleaded Municipal Liability.</u>

Defendant first faults Plaintiff for failing to allege "any official policy or repeated custom of the City" that resulted in the deprivation of Plaintiffs' constitutional rights.  (Def.'s Mot. at p. 5, Doc. 8.)  This argument should fail at inception.  True, local government bodies can only be sued under 42 U.S.C. § 1983 when an official policy or custom "'causes' an employee to violate another's constitutional rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978).  But a plaintiff may show the existence of such an official policy or custom in at least four different ways: "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

Here, whatever was omitted from Plaintiff's original complaint, the amended complaint clearly alleges that Plaintiffs' constitutional rights were and are being violated by the Director of Fleet Services, Keith Shields, who is in fact a final policymaker under the second prong quoted above.  (Pls.' Amend. Compl. ¶¶ 17-20, Doc. 8.)  Furthermore, even if there was doubt as to Mr. Shields's final decision-making authority, which there is not, the City has clearly ratified his decisions by affirming the suspensions, by continuing to uphold them, by denying Plaintiffs grievance procedures under the City's official policies, and by launching a spurious police investigation meant to further chill and silence the Plaintiffs from exercising their rights under the First Amendment.  *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("When a subordinate's decision is subject to review by the municipality's authorized policymakers, they

have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.")

Finally, Plaintiffs' amended complaint arguably goes beyond what is truly necessary. "[C]omplaints under § 1983 are not subject to any heightened pleading standards." *Lott v. Swift Transportation Co., Inc.*, 694 F. Supp. 2d 923, 928 (Donald, J.) (citing *Leatherman v. Tarrant Co. Narcotics Intelligence and Coordination*, 507 U.S. 163, 167-68 (1993)). What matters is that defendants have notice of the claims against them. *See, e.g., Rhodes v. R&L Carriers, Inc.*, No. 11–3054, 2012 WL 3156437 at *2 (6th Cir. Aug. 6, 2012) ("Although *Twombly* and *Iqbal* clarified that a complaint must state a plausible claim—not just a possible claim—this Court has cautioned against reading '*Twombly* and *Iqbal* so narrowly as to be the death of notice pleading. . . .'") (internal citation omitted). Here, of course, Defendant has fair notice of the claims against it, especially now that Plaintiffs have amended to specify the name and identity of the final policymaker. *See, e.g., Lott*, 694 F. Supp. 2d at 928 (ruling post *Twombly/Iqbal* that "[i]dentifying the precise policy or custom may help make the complaint's allegations more plausible, but categorically viewing such a failure as dispositive in every case involving § 1983 claims risks imposing a higher standard of pleading than the Federal Rules of Civil Procedure mandate.")

For all these reasons, there is no merit to Defendant's argument that Plaintiffs failed to sufficiently plead or identify the source of municipal liability in this case. Defendant's motion to dismiss on this basis should be denied.

3. <u>Defendant's Argument that Plaintiffs Have Not Suffered an 'Adverse Employment Action' Is Likewise without Merit.</u>

Defendant's argument that Plaintiffs' suspension does not qualify as "an adverse

employment action" misses the mark for at least two reasons  First, Defendant is confusing legal frameworks and borrowing too heavily from Title VII disparate treatment cases.  In Title VII cases, where the statute literally says it is unlawful to "discriminate against any individual with respect to his <u>compensation, terms, conditions, or privileges of employment</u>," 42 U.S.C. § 2000e-2(a)(1), the Sixth Circuit requires proof of an "adverse employment action," i.e., a material, economic, and often tangible change to the terms and conditions of the plaintiff's employment. *White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 795 (6th Cir. 2004), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  In contrast to the cases string cited by Defendant, however, this is not a Title VII case.  This is a First Amendment case.

In First Amendment retaliation cases, "a plaintiff must show that (1) he was participating in a constitutionally protected activity; (2) defendant's action injured plaintiff in a way "likely [to] chill a person of ordinary firmness from" further participation in that activity; and (3) in part, plaintiff's constitutionally protected activity motivated defendant's adverse action."  *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007) (internal citations omitted).  Thus, the question is not whether Plaintiffs suffered a tangible, material change in the terms or conditions of their employment but, rather, whether their 15-month and counting suspension, the City's denial of their grievance requests, and the City's phony police investigation would chill a person of ordinary firmness from engaging in future speech protected by the First Amendment.  *Id*. at 821 (observing that the "inquiry of "whether activity is 'protected' or an action is 'adverse' " is context-specific" and noting that the proper inquiry is whether the adverse action would tend to chill free speech.)  It does.  And Plaintiffs allege, of course, that such actions do infringe upon their rights under the First Amendment, but Defendant makes no challenge whatsoever here.

Second, even if it were appropriate for the Court to look for an 'adverse employment action' of the Title VII kind, the Defendant is wrong again to suggest that Plaintiffs have failed to plead one. Granted, in more than one Title VII case, the Sixth Circuit has held that "a suspension *with* pay and full benefits pending a timely investigation into suspected wrongdoing is not an adverse employment action." *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004). But here again, context matters. Even under Title VII's anti-retaliation provision, the question is not whether the suspension was paid or not, but whether "the employer's actions [are] harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).[1] Here, Plaintiffs respectfully submit that a 15-month and counting suspension coupled with a retaliatory and phony police investigation would be more than enough to dissuade a reasonable worker from making or supporting a charge of discrimination, or—in the parlance of this case, engaging in protected speech. Defendant's argument has no merit.

4. <u>Plaintiffs State a Cognizable Fourteenth Amendment Due Process Claim.</u>

Finally, Defendant argues that Plaintiffs failed to plead the elements of a due process claim. This argument is pretermitted by the fact that Plaintiffs have amended their complaint. Still, the elements of a procedural due process claim are met here because Plaintiffs have been punished, maligned, and forbidden from returning to work by the government, which is a property and liberty interest, for over 15 months while Defendant attempts to build a case for termination, which is obviously what is going on here. Moreover, Plaintiffs have both filed

---

[1] Put another way, under *Burlington*, what constitutes an 'adverse employment action' in a Title VII disparate treatment claim is not the same as what constitutes 'adverse employment action' in a Title VII *retaliation* case. In a retaliation case, the question is whether the totality of the circumstances would dissuade the exercise of rights under Title VII. Similarly, the question here is whether the totality of circumstances—i.e., a 15-month and counting suspension and police "investigation" would dissuade a reasonable employee of the City from engaging in similar protected activities.

grievances with the City to address their prolonged suspensions, but their requests have been preemptively denied because the City takes the position, which is debunked above, that there has been no "adverse employment action." Accordingly, the City offers no post-deprivation remedy for the First Amendment violations of this case. Further, there is no adequate state law remedy to address the problem, because the only state law or statute under which the City can be sued under requires there to be a termination, which there has not.[2]

5. Conclusion

For all the foregoing reasons, Defendant's motion to dismiss [Doc. 8] is due to be denied. Accordingly, this Court should deny the motion and enter a scheduling order.

Respectfully submitted,

/s/Richard E. Collins
Richard E. Collins (TN Bar No. 024368)
STANLEY, KURTZ & COLLINS, PLLC
422 S. Gay Street, Suite 301
Knoxville, TN 37902
(865) 522-9942
(865) 522-9945 fax
richard@knoxvilleattorney.com

Jonathan W. Doolan (TN Bar No. 024397)
LAW OFFICE OF JONATHAN W. DOOLAN
800 S. Gay Street, Suite 2250
Knoxville, TN 37929
(865) 851-1030
jonathan@doolanlawoffice.com

---

[2] See Tennessee Public Protection Act, T.C.A. 50-4-304, requiring a "termination."

## CERTIFICATE OF SERVICE

  I hereby certify that on this 13th day of May, 2021, a true and correct copy of the foregoing was served on the following counsel of record via ECF:

Devin Parker Lyon
Arnett, Draper & Hagood
2300 First Tennessee Plaza
P O Box 300
Knoxville, TN 37901
865-546-7000
Email: dlyon@adhknox.com

                /s/Richard E. Collins
                Richard E. Collins